Celanese Corporation of America v. Commissioner.
Celanese Corp. of America v. Commissioner
Docket No. 108617.
United States Tax Court
1943 Tax Ct. Memo LEXIS 488; 1 T.C.M. (CCH) 469; T.C.M. (RIA) 43043; January 27, 1943
*488 Fred R. Angevine, Esq., 20 Exchange Place, New York City, for the petitioner. Walt Mandry, Esq., for the respondent. STERNHAGEN Memorandum Opinion STERNHAGEN, Judge: The Commissioner determined against petitioner, as a withholding agent, a deficiency in tax of $14,074.20 and 25 per cent addition of $3,518.55, for 1937, and a deficiency in tax of $7,253.08 and 25 per cent addition of $1,813.27, for 1938, in respect of amounts paid to a nonresident alien. The petitioner contends that the payments were not subject to withholding. All the facts are stipulated. The petitioner, a domestic corporation, had its principal office in New York. In 1937, it paid $140,742.04, and in 1938, $72,530.79, to Henri Dreyfus, of London, England, a nonresident alien, who was not engaged in trade or business in the United States and had no office in the United States. The payments were made pursuant to a contract of November 30, 1918, between Dreyfus and his brother, called "vendors", and petitioner, called "purchaser". This contract, after reciting the desire of the purchaser to acquire and of the vendors to sell secret processes and patents, provides for such purchase and sale. The terms included an *489 obligation of the purchaser to pay the vendors each year, as purchase price, a measurable portion of the purchaser's earnings. The patents and processes were all transferred to the purchaser soon after the contract, and for many years payments have been made annually as the contract provided. The Commissioner, in the notice of deficiency, simply said that the amounts paid to Dreyfus were income upon which petitioner was liable to tax as withholding agent. He now says: It is the contention of the Commissioner, that the sums paid to Henri Dreyfus during the years 1937 and 1938 under the agreement dated November 30, 1918, as later supplemented, were royalties in payment of a license to the taxpayer to use the patents and secret processes covered under the terms of said agreement. It is believed that a close examination of the original and supplemental agreements will amply support the Commissioner's contention that the payments were in the nature of royalties rather than for the purchase of outright patent rights and secret processes. The evidence shows clearly that the amounts of $140,742.04 and $72,530.79, paid by petitioner to Dreyfus, were not royalties but were contract payments *490 of purchase price for the patents and processes. The stipulation categorically says that the patents and processes covered by the 1918 contract were transferred to the petitioner before the tax years in question. In the tax years, petitioner was, and had been for some time, the owner of the patents and processes, and, therefore, the payments which it was making for them could not be royalties. They were, as the contract of purchase clearly provided, the installments of purchase price measured by its earnings and dividends. Royalties are the payments to an owner by the user or licensee. It would be an anomaly to call the amounts paid by an owner to a prior owner, from whom he had bought the patents, royalties. The fact that the purchase price is payable in installments and that the annual installments are measurable by the income from the use of the patents, just as a royalty might have been, does not convert the price installments into royalties. The common meaning of royalties, as used in the taxing statute, has not been lost and there is no reason to believe that when the parties drew their contract in 1918 they were intending to provide for licenses and royalties when they expressly *491 provided for sale and price. They have apparently for twenty years consistently treated the contract as one of sale; and the Commissioner is not now in a position to impose a new conception upon them. The respondent calls attention to the use of the word sub-license and various other incidental provisions of the original and supplemental contracts to show that, despite the form of purchase and sale, the parties were, in fact, providing merely for a license and royalties. None of these detailed provisions has the force which respondent would give it. The use of the word sub-license in the provision that any "sub-licensees" shall give the purchaser the benefit of improvements may have been an inadvertence, but it does not affect the substantial character of the contract itself. This is also true in respect of the obligation of the vendors not to invade the purchaser's area and to take proceedings necessary to prevent such use by another. The reservation by the vendors of their right to recover the patents and processes in case of the bankruptcy of the purchaser and the continuation of the payment in installments of a purchase price after the death of the vendors are not inconsistent *492 with the transfer of title as the contract contemplated, nor do the reservations to the vendors provided in the later contract for the mortgage by the purchaser detract from the recognition of the contract as a sale. Contemporaneously with the sale of the patents and processes, the parties separately contracted for the employment of Dreyfus by petitioner as a manager at a fixed salary. Respondent relies upon the fact that petitioner has, since the contract was made in 1918, treated the periodic payments on its accounts similarly to the salary payments, as current expenses. Respondent urges that if the contract payments were indeed purchase payments, the proper accounting would have been to capitalize them as cost of a capital asset. The manner of accounting is not a substantive factor upon which to determine the character of the transaction, otherwise fairly free from ambiguity. The amounts of $140,742.04, in 1937, and $72,530.79, in 1938, paid by petitioner to Dreyfus, were, as petitioner contends, installments of the purchase price of the patents and processes covered by the 1918 contract, and were not royalties from which the petitioner was required to withhold tax. It was under *493 no duty to file a withholding tax return and its failure to file such a return can result in no penalty. Decision will be entered for the petitioner.